Sam Savage was indicted for the offense of murder, in violation of § 13A-6-2, Code of Alabama 1975. The jury found Savage guilty of the lesser included offense of manslaughter, in violation of § 13A-6-3, Code of Alabama 1975, and he was sentenced to 10 years' imprisonment and was fined $1,000.
The sole issue raised on appeal is whether the trial court committed reversible error by denying Savage's motion for new trial, which alleged that the State withheld exculpatory information from defense counsel in violation of Brady v.Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
As part of his preparation for trial, George Elbrecht, Savage's trial counsel, filed a motion for discovery, including "any information which would exculpate the defendant herein." The trial court issued an order directing the district attorney to provide "all discovery requested in said motion." Pursuant to this order, the district attorney provided Elbrecht with copies of the following documents: 1) the written statement of Jessie Peters, the brother of *Page 406 
the decedent, Lavon Peters, who was questioned by Investigator Johnny Blackmon of the Conecuh County Sheriff's Department; 2) the written statement of Roney Peters, the mother of the decedent, who was also questioned by Blackmon; 3) two written statements of Janice Peters, the wife of the decedent, who was also questioned by Blackmon; 4) the autopsy report relating to the decedent; and 5) the written statement of Savage, who was also questioned by Blackmon.
Prior to trial, Elbrecht asked the district attorney and Investigator Blackmon whether any witnesses who were present either when the decedent was stabbed or when the decedent died at the hospital had made inconsistent statements to the police. Blackmon replied that Roney Peters, the mother of the decedent, made an initial oral statement that implied that Savage had acted in self-defense in stabbing her son and that this oral statement conflicted with her subsequent written statement. As a result of Roney Peters's inconsistent statements, the district attorney elected not to call her as a witness for the prosecution.
At trial, the district attorney called the following eyewitnesses to the stabbing to testify on behalf of the prosecution: 1) Janice Peters, the wife of the decedent; 2) George Washington Johnson, Jr., a friend of the decedent's brother, Jessie Peters; 3) Henry Peters, a brother of the decedent; and 4) Jessie Peters, a brother of the decedent.
Johnson testified at trial that he observed Savage and the decedent, Lavon Peters, arguing about when Savage would reclaim the decedent's shotgun from a pawn shop. According to Johnson, when Savage told the decedent that he could not reclaim the gun until the following Monday, the decedent threw a brick at Savage, who was sitting on the front porch of Roney Peters's house. Johnson testified that although Roney Peters attempted to separate the two men, the decedent threw a second brick at Savage and then turned and ran. According to Johnson, Savage then jumped off the porch and ran after the decedent, the decedent tripped over a crosstie in the yard, and Savage then jumped on the decedent and they began fighting. Johnson further testified that the decedent then got up and grabbed his neck and that Savage said "I told him I'd fuck him up."
Henry Peters testified at trial that the decedent threw a brick at Savage and then turned and ran and that Savage immediately ran behind him, cutting at the decedent with a knife. Henry Peters further testified that the decedent then tripped over a crosstie and that Savage then jumped on the decedent and cut him. According to Henry Peters, the decedent then got up and said that Savage had cut him, and, that Savage was walking around in the yard saying that he was going to kill the decedent and, that the next time the decedent "messed with him he was going to kill him."
Although Savage presented evidence that he had stabbed the decedent in self-defense, the jury found Savage guilty of manslaughter. At the sentencing hearing, Elbrecht learned for the first time that in addition to Roney Peters, other eyewitnesses had initially made oral statements upholding Savage's claim of self-defense but subsequently had changed their statements:
 "Q (Mr. Chapman): Did the statements you received from other witnesses who were there at the time of the cutting coincide with either one of Roney Peters' statements?
 "A: Yes, sir. I had statements from — I had talked to several people at the hospital that — and the statements they gave there [were] basically the same as the fact of it being self defense or Lavon starting the altercation. Then when the statements from other people, I got written statements, it was basically that Lavon started it, but, Lavon ran then.
 "Q: So, all of the statements changed a little bit when you got written statements?
"A: Yes, sir."
At the conclusion of the sentencing hearing, Elbrecht withdrew as counsel for Savage, and William Robert McMillan was appointed *Page 407 
as appellate counsel for Savage. McMillan filed a motion for new trial on the ground that the State had failed to comply with the discovery order, which precluded defense counsel from adequately preparing Savage's defense because the information withheld was arguably exculpatory in nature or would otherwise have aided the defense counsel in the defense of the case.
Elbrecht testified at the hearing on the motion for new trial that the district attorney had provided him with copies of the written statements of Savage, Jessie Peters, Roney Peters, and Janice Peters, and that the district attorney had informed him of the inconsistent statement of Roney Peters. Elbrecht further testified that "I specifically asked Mr. Blackmon before we went to trial out there in that hall if any of the other people that were at the scene made inconsistent statements. And he told me no."
Investigator Blackmon then testified that he had received oral statements from Roney Peters, Henry Peters, and George Washington Johnson, Jr., but that none of these oral statements were taken down as contemporaneous notes. Blackmon testified that each of these three individuals indicated to him that the decedent was at fault and that Savage was acting in self-defense. Blackmon testified concerning Johnson as follows:
 "Q (By Mr. McMillan): Now, you got an oral statement from Mr. George Washington Johnson, Jr., is that correct?
"A: Yes, sir.
 "Q: All right. What was the oral statement that you got from him?
 "A: It was awfully brief. I asked him the question: 'What do you think about it?' And he — well, I kind of got to go along with them. I said, 'You think Lavon started it?' He said, 'Yes, sir, I do.' I said, 'Do you think that it was basically self defense?' And he kind of indicated yes.
 "Q: He was going along with what Roney Peters and what Henry Peters had said, is that correct?
"A: The best I could understand him, yes, sir.
 "Q: And that's what you understood at that time Roney Peters and Henry Peters' testimony to be?
"A: Yes, sir."
Elbrecht was then recalled to the witness stand and testified that he did not receive the information on the exculpatory oral statements of Henry Peters or George Washington Johnson, Jr. Elbrecht further testified that he thought that the district attorney did not know about the existence of these exculpatory oral statements of Henry Peters and Johnson.
The trial judge denied the motion for new trial and specifically stated that the State, "in good faith, attempted to comply with [the discovery] rule."
Suppression of material evidence favorable to the defendant is a violation of the due process clause of the United States Constitution. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194,10 L.Ed.2d 215 (1963). The good faith of the prosecution in the suppression of that evidence is irrelevant. Ex parte Dickerson,517 So.2d 628 (Ala. 1987).
To establish a discovery violation under Brady v. Maryland, the defendant must prove 1) that the prosecution suppressed the evidence; 2) that the evidence was of a character favorable to the defense of the defendant; and 3) that the evidence was material. Ex parte Cammon, 578 So.2d 1089, 1091 (Ala. 1991).
The knowledge of government agents working on the case, including a deputy sheriff, as to the existence of exculpatory evidence will be imputed to the prosecutor. Sexton v. State,529 So.2d 1041, 1045 (Ala.Cr.App. 1988).
Deputy Sheriff Johnny Blackmon, an investigator in the case, had knowledge of the oral statements of Henry Peters and George Washington Johnson, Jr. The State did not provide that evidence to Elbrecht. Hence, Savage has established the first element of a Brady violation — that the prosecution, which had imputed knowledge of the two oral statements, suppressed this evidence. *Page 408 
In United States v. Bagley, 473 U.S. 667, 676,105 S.Ct. 3375, 3380, 87 L.Ed.2d 481 (1985), the United States Supreme Court held that impeachment evidence is " 'evidence favorable to an accused'. . . so that, if disclosed and used effectively, it may make the difference between conviction and acquittal." This court, moreover, in Sexton v. State, supra, 529 So.2d at 1045, recognized that impeachment evidence falls within theBrady rule.
In the present case, the oral statements of Henry Peters and Johnson that Savage had acted in self-defense, besides being arguably exculpatory, could clearly have been used by Elbrecht to impeach their testimony at trial that Savage brandished a knife, ran after the decedent, and threatened to kill the decedent. We note, moreover, that the prosecutor, when faced with the actual knowledge of Roney Peters's inconsistent statements, declined to use her as a witness at Savage's trial to avoid her impeachment by defense counsel. Hence, clearly the State suppressed evidence that was favorable to the defendant.
"[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." UnitedStates v. Bagley, supra, 473 U.S. at 682, 105 S.Ct. at 3383.
 "We agree that the prosecutor's failure to respond fully to a Brady request may impair the adversary process in this manner. And the more specifically the defense requests certain evidence, thus putting the prosecutor on notice of its value, the more reasonable it is for the defense to assume from the nondisclosure that the evidence does not exist, and to make pretrial and trial decisions on the basis of this assumption. This possibility of impairment does not necessitate a different standard of materiality, however, for under the Strickland formulation the reviewing court may consider directly any adverse effect that the prosecutor's failure to respond might have had on the preparation or presentation of the defendant's case. The reviewing court should assess the possibility that such effect might have occurred in light of the totality of the circumstances and with an awareness of the difficulty of reconstructing in a post-trial proceeding the course that the defense and the trial would have taken had the defense not been misled by the prosecutor's incomplete response."
United States v. Bagley, 473 U.S. 667, 682-83, 105 S.Ct. 3375,3384, 87 L.Ed.2d 481 (1985).
In the case sub judice, Elbrecht testified that he specifically asked whether any of the witnesses gave inconsistent statements, and that Blackmon and the prosecutor disclosed only the name of Roney Peters, who was not called as a witness because of her inconsistent statements.
The prosecutor responded that because Elbrecht asked for the names of witnesses who gave inconsistent statements at thescene of the altercation and because Henry Peters and Johnson gave their oral statements at the hospital, there was no duty to disclose the substance of their oral statements. The prosecutor also argued that no disclosure was warranted because no written statements of Henry Peters or Johnson were taken by the police, and hence their oral statements were not inconsistent with any other statements. We disagree. See Exparte Johnson, 576 So.2d 1281 (Ala. 1991).
The pivotal issue for the jury to decide in this case was whether Savage acted in self-defense when he stabbed the decedent. Hence, any statement, whether oral or written, bearing upon the issue of self-defense was clearly material to this case, and we decline to engage in semantics to justify suppression of material evidence that is favorable to the defendant. The failure of the State to supply the information directed the defense away from challenging the testimony of two key witnesses, witnesses whose trial testimony, if believed, would clearly show whether Savage was guilty. Without these two witnesses, the State would have had a much weaker *Page 409 
case, and the cumulative effect of their unchallenged testimony was highly prejudicial to Savage. Hence, Savage has clearly established a discovery violation under Brady v. Maryland.
The foregoing opinion was prepared by the Honorable JAMES H. FAULKNER, a former Alabama Supreme Court Justice, and his opinion is hereby adopted as that of the court.
The judgment of the circuit court is reversed and the cause remanded for further proceedings not inconsistent with this opinion.
REVERSED AND REMANDED.
PATTERSON, BOWEN, TAYLOR and McMILLAN, JJ., concur.
MONTIEL, J., dissents without opinion.