The appellant, Albert Lee Jefferson, was convicted of murder during the course of a robbery, defined as a capital offense in § 13A-5-31(a)(2), Code of Alabama 1975. The jury, by a vote of 11 to 1, recommended that the death penalty be imposed. The trial court accepted the jury's recommendation and sentenced the appellant to death by electrocution. The appellant appealed his conviction to this court and we remanded the case so that a new sentencing hearing could be held. On return to remand, we affirmed the appellant's conviction and the sentence of death.Jefferson v. State, 473 So.2d 1100 (Ala.Cr.App. 1984). The Alabama Supreme Court affirmed the appellant's conviction in Exparte Jefferson, 473 So.2d 1110 (Ala. 1985) and the United States Supreme Court denied certiorari review in Jefferson v.Alabama, 479 U.S. 922, 107 S.Ct. 328, 93 L.Ed.2d 300 (1986).
In December 1986, the appellant filed a petition for a writ of error coram nobis, (now a Rule 32, A.R.Crim.P., petition), attacking his conviction and sentence to death. That petition was amended in February 1987, September 1988, and again in December 1988, after new counsel was appointed. The first hearing on the petition was held in January 1988. Two more hearings were held in May 1989 and March 1990. The trial court denied the petition in October 1992. Notice of appeal was filed with this court in October 1992. The cause was submitted to this court after oral arguments on December 8, 1992.
The appellant makes numerous allegations in his post-conviction petition. However, because we find that the trial court erred in denying the petition, we need only address the issue that merits reversal.
A brief rendition of the facts is necessary in examining the issue raised by the appellant. The state's evidence tended to show that the body of Marion Morris Stone, a painter, was found in Mildred Baldwin's house in Lanett on April 17, 1981. He bled to death as a result of the severing of three major blood vessels in his neck. Eddie Lee Tucker, the appellant's co-defendant, pursuant to an agreement with the state, testified against the appellant. He testified that he and the appellant entered Mildred Baldwin's house to burglarize the dwelling. While they were in the house, the victim, a painter hired by Baldwin, entered the house. Tucker testified that the appellant cut his throat, and that after his throat had been cut they took his wallet and pocketknife. Jefferson and Tucker were seen running from the Baldwin house around the time of the murder. Another witness, Willie Hugh Wilson, a neighbor of Baldwin's, testified that he saw the appellant running from the Baldwin house around the time of the murder. *Page 315 
The appellant alleged in his petition that the state suppressed exculpatory evidence and that, therefore, he was denied due process and a fair trial. Specifically, he contended that certain police reports detailing witnesses' statements were suppressed. The record reveals that several people had talked with officers of the Lanett Police Department and that the police had transcribed these statements. These statements indicated that the witnesses had seen Tucker and another person running from the Baldwin house on the day of the murder. Two witnesses identified the other individual as Jerry Williams, three other witnesses stated that they did not recognize the man with Tucker. There was also a statement taken from Kenny Lamar Ferrell, in which he stated that he had overheard Aaron Smith, Eddie Lee Tucker, and Jerry Williams talking about robbing a gasoline service station and cutting the victim's throat. Two witnesses, Eleanor Burton and Willie Wilson, who made statements contained in the undisclosed police reports testified at trial. Neither of their testimonies was consistent with their prior statements to police. Burton told police before trial that the person running from the house with Tucker was Jerry Williams. Burton testified at trial, however, that she could not identify the other individual with Tucker. Wilson testified at trial that the person running from the house with Tucker was the appellant. The police reports showed that Wilson was one of those who could not identify the individual when he made his statement.
The Rule 32 court made the following findings concerning this issue:
 "In regard to the withholding of exculpatory evidence claim, it is clear that defendant's trial counsel were not furnished with reports from the Lanett Police Department in which Eleanor Burton and Webster Burton told police that Eddie Lee Tucker was seen running from the direction of the scene of Marion Stone's murder with an individual named Jerry Williams. The police report also reflected that four other witnesses saw Eddie Lee Tucker and an unknown male running from the scene. Finally, the report indicates that Kenny Lamar Ferrell overheard Aaron Smith, Eddie Lee Tucker and Jerry Williams talking about robbing a service station and cutting the attendant's throat. At the outset it should be noted that there is no indication of when this report came into the district attorney's possession. In any event it would seem that this report should have been made known to defense counsel. In fact, defense counsel testified that this information would have been helpful. The Court would agree that the information would have been of benefit to defense counsel, if only for investigative purposes. This Court is satisfied, as apparently the trial court was, that the failure of the State to give this information to defense counsel was inadvertent."
There is no constitutional right to discovery in a criminal case. Discovery is governed in Alabama by Rule 16, A.R.Crim.P. (formerly Rule 18, A.R.Crim.P.Temp.) However, the United States Supreme Court has held that it is a denial of due process when the prosecution suppresses exculpatory evidence. Brady v.Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The United States Supreme Court in Brady stated the following:
 "[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."
Brady, 373 U.S. at 87, 83 S.Ct. at 1196. (Emphasis added.)
To prove a Brady violation, a defendant must show (1) that the prosecution suppressed evidence, (2) that the evidence was of a character favorable to his defense, and (3) that the evidence was material. Ex parte Cammon, 578 So.2d 1089, 1091
(Ala. 1991); Ex parte Brown, 548 So.2d 993, 994 (Ala. 1989).
There is no dispute that evidence in this case was suppressed by the prosecution. The trial court stated so in its order. The court did state that the suppression was inadvertent. However, inadvertence does not excuse a Brady violation. "[T]he good faith or bad faith of the prosecution" is immaterial. *Page 316 Brady, 373 U.S. at 87, 83 S.Ct. at 1197. Further, the appellant specifically requested any information that showed that someone else committed the crime.
Was the evidence suppressed favorable to the defendant? There is no question that evidence that points to the commission of the act by someone other than the accused is favorable to the defense. Ex parte Watkins, 509 So.2d 1064 (Ala. 1984). Further, impeachment evidence is favorable evidence. The United States Supreme Court in United States v. Bagley, 473 U.S. 667,105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), stated:
 "Impeachment evidence . . . as well as exculpatory evidence, falls within the Brady rule. See Giglio v. United States, 405 U.S. 150, 154 [92 S.Ct. 763, 766, 31 L.Ed.2d 104] (1972). Such evidence is 'evidence favorable to an accused,' Brady, 373 U.S. at 87 [83 S.Ct. at 1196], so that, if disclosed and used effectively, it may make the difference between conviction and acquittal. Cf. Napue v. Illinois, 360 U.S. 264, 269 [79 S.Ct. 1173, 1177, 3 L.Ed.2d 1217] (1959) ('the jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend')."
473 U.S. at 676, 105 S.Ct. at 3380. (Emphasis added.) See alsoSavage v. State, 600 So.2d 405 (Ala.Cr.App. 1992), cert. denied600 So.2d 409 (Ala. 1992).
Last, but perhaps most importantly, we must determine whether the evidence was "material." The United States Supreme Court inBagley defined "material" in relation to the disclosure of evidence. The court stated:
 "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome."
473 U.S. at 682, 105 S.Ct. at 3383. United States v. Agurs,427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1975).
The evidence here would not only have tended to show that someone other than the appellant had committed the crime but also it would have been relevant to impeach the credibility of the two witnesses who testified for the prosecution.
 "The defendant had no opportunity to make the investigation and, indeed, to prepare the evidence for use to its fullest advantage. The evidence . . . prevented defendant from receiving a fair trial. See United States v. McPartlin, 595 F.2d 1321 (7th Cir.), cert. denied, 444 U.S. 833, 100 S.Ct. 65, 62 L.Ed.2d 43 (1979)."
Ex parte Duncan, 456 So.2d 362, 365 (Ala. 1984) (Justice Embry, dissenting.)
The most damaging evidence presented was the testimony of the appellant's co-defendant who had a compelling reason to lie. There was evidence that a partial fingerprint belonging to the appellant was found on a heater in the vacant house. However, we cannot say that this evidence alone is sufficient to establish a reasonable probability that even had the exculpatory evidence been produced the verdict would have been the same. Considering the totality-of-the-circumstances,Bagley, supra, we conclude that the nondisclosed evidence was crucial to the appellant's defense. See Savage, supra. The failure to disclose these police reports violated the appellant's right to due process. See Ex parte Duncan, supra. We cannot say that had this information been disclosed the verdict would have been the same.
We agree with Justice Marshall:
 " '[T]he purpose of a trial is as much the acquittal of an innocent person as it is the conviction of a guilty one.' Application of Kapatos, 208 F. Supp. 883, 888 (SDNY 1962); see Giles v. Maryland, 386 U.S. 66, 98 [87 S.Ct. 793, 809, 17 L.Ed.2d 737] (1967) (Fortas, J., concurring in judgment) ('The State's obligation is not to convict, but to see that, so far as possible, truth emerges'). When evidence favorable to the defendant is known to exist, disclosure only enhances the quest for truth; it takes no direct toll on that inquiry. Moreover, the existence of any small piece of evidence favorable to the defense may, in a particular case, create just the doubt that prevents the jury from returning a verdict of *Page 317 
guilty. The private whys and wherefores of jury deliberations pose an impenetrable barrier to our ability to know just which piece of information might make, or might have made, a difference.
 "When the State does not disclose information in its possession that might reasonably be considered favorable to the defense, it precludes the trier of fact from gaining access to such information and thereby undermines the reliability of the verdict. Unlike a situation in which exculpatory evidence exists but neither the defense nor the prosecutor has uncovered it, in this situation the state already has, resting in its files, material that would be of assistance to the defendant. With a minimum of effort, the state could improve the real and apparent fairness of the trial enormously, by assuring that the defendant may place before the trier of fact favorable evidence known to the government. This proposition is not new. We have long recognized that, within the limit of the state's ability to identify so-called exculpatory information, the state's concern for a fair verdict precludes it from withholding from the defense evidence favorable to the defendant's case in the prosecutor's files."
Bagley, 473 U.S. at 692-93, 105 S.Ct. at 3389. (Justice Marshall, dissenting).
Having determined that the undisclosed evidence was material, we cannot apply the harmless error analysis to the facts of this case. Bagley, supra; Chapman v. California, 386 U.S. 18,87 S.Ct. 824, 17 L.Ed.2d 705 (1967).
The appellant was denied his constitutional right to due process. The trial court erred in denying the appellant's post-conviction petition. For the foregoing reasons, the judgment is reversed and the cause remanded to the Circuit Court for Chambers County for proceedings not inconsistent with this opinion.
REVERSED AND REMANDED.
All the Judges concur.