The appellant, Willie Frank Hill, a City of Montgomery police officer, was convicted of using his position for direct personal financial gain in violation of § 36-25-5, Code of Alabama 1975, part of the Alabama Ethics Act. He was sentenced to three years' imprisonment; that sentence was split and he was ordered to serve one year on probation followed by one year in the penitentiary.
The state's evidence tended to show that on September 18, 1992, Officer Hill was patrolling the Mobile Highway in west Montgomery with his partner, Officer C.K. Davis. William Guilford pulled his car out into traffic in front of the officers' patrol car. Officer Hill turned the patrol car around and got behind Guilford's car. When Officer Davis turned on the patrol car's blue lights, he saw Guilford throw something from his car window. The officers stopped to see what Guilford had thrown from his window and recovered a plastic bag that contained a small amount of a green leafy substance.
The officers stopped Guilford in the center turn lane of the road. Guilford told the officers that his identification was in his wallet in his glove compartment, which was locked. Guilford then denied throwing the plastic bag from his car window. Officer Davis smelled alcohol on Guilford's breath and took him across the road to a parking lot to perform a field sobriety test.
While Officer Davis and Guilford were in the parking lot, Officer Hill stayed with Guilford's car. Guilford testified that when he and Officer Davis were walking back to the car, Officer Hill said that he was going to check Guilford's identification in his wallet. Officer Hill leaned into Guilford's car where it appeared that he unlocked the glove compartment and looked in Guilford's wallet. Officer Hill then told Guilford that they had another police call on the radio, and the officers got in their patrol car, drove away, and never returned.
Guilford, thinking that it was strange that the officers did not give him a ticket or arrest him, checked his wallet, which had been in the glove compartment. He had had exactly $1,000 in "folded money" in his wallet, which he had planned to use to purchase his employer's truck the next day and approximately $140 in "spending money" that was not folded. When he checked his wallet, he discovered that the money in his wallet was not arranged the way it was before the police officers stopped him and that some of it was missing.
Guilford went to a pay telephone and called the emergency number, 911, to report the theft of his money by the police officer. He was told that he needed to come to the police station to make a report. At that time, Officers Hill and Davis, who were en route to a disturbance, were directed to return to the police station. Officer Hill commented to Officer Davis that they were probably being called in because Guilford had lodged a complaint against them. *Page 1130 
Guilford arrived at the police station at the same time Officers Hill and Davis arrived. Guilford told the officers investigating his complaint that two $50 bills and nine $20 bills had been taken from his wallet. When the investigating officers asked Officer Hill to empty his pockets, he removed two $50 bills, ten $20 bills, one $10 bill, and four $1 bills from his shirt pocket. He also had three $20 bills in his wallet.
When asked, Officer Hill said he could not remember where he got the money that was in his pocket.
Based on this incident, Officer Hill was charged with theft in the second degree and with using his position for direct personal financial gain in violation of the Ethics Act. He was acquitted of the theft charge and was found guilty of violating the Ethics Act.
 I
The appellant contends that the jury's verdict finding him guilty of violating the Ethics Act was "based on conjecture, speculation, and supposition rather than on evidence and proven facts." While it is true that the evidence against the appellant was circumstantial, that does not mean that it was deficient.
 "Circumstantial evidence is not inferior or deficient evidence. See Linzy v. State, 455 So.2d 260 (Ala.Cr.App. 1984). 'Circumstantial evidence is entitled to the same weight as direct evidence, provided it points to the guilt of the accused.' Casey v. State, 401 So.2d 330, 331 (Ala.Cr.App. 1981). 'Whether circumstantial evidence tending to connect the defendant with the crime excludes, to a moral certainty, every other reasonable hypothesis than that of the defendant's guilt is a question for the jury and not the court.' Cumbo v. State, 368 So.2d 871, 875 (Ala.Cr.App.), cert. denied, 368 So.2d 877 (Ala. 1979)."
Holder v. State, 584 So.2d 872, 875-76 (Ala.Cr.App. 1991).
When reviewing the sufficiency of the evidence to support a jury's verdict, we must view the evidence in a light most favorable to the state. Underwood v. State, 646 So.2d 692
(Ala.Cr.App. 1993).
The state presented evidence that Officer Hill used his position as a law enforcement officer to gain access to Guilford's wallet. The state presented evidence that after Officer Hill had access to Guilford's wallet, money in particular denominations was missing from the wallet. Immediately thereafter, Officer Hill had in his possession currency in the same denominations as the currency that was taken from Guilford's wallet.
Section 36-25-5(a), Code of Alabama 1975, provides in pertinent part that "[n]o public . . . employee shall use an official position . . . to obtain direct personal financial gain for himself. . . ." Viewing the evidence in the light most favorable to the state, there was certainly sufficient evidence from which the jury could find Hill guilty of violating the Ethics Act.
 II
Hill also contends that the denial of his motion for a new trial was error. Hill filed a motion for a new trial based in part on the contention that the state withheld exculpatory evidence in violation of Brady v. Maryland, 373 U.S. 83,83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The Brady Court held that:
 "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."
373 U.S. at 87, 83 S.Ct. at 1196-97.
The state made no response to the appellant's motion. Although the court stated that it would hold a hearing on Hill's motion, the record does not reflect that a date was ever set for a hearing or that a hearing was held.
The trial court denied Hill's motion for a new trial on August 16, 1993, more than 60 days after the pronouncement of his sentence on May 25. Hill's motion, however, had already been denied by operation of law pursuant to Rule 24.4, Ala.R.Crim.P., which provides:
 "No motion for new trial or motion in arrest of judgment shall remain pending in the trial court for more than sixty (60) days after the pronouncement of sentence, *Page 1131 
except as provided in this section. A failure by the trial court to rule on such a motion within the sixty (60) days allowed by this section shall constitute a denial of the motion as of the sixtieth day; provided, however, that with the express consent of the prosecutor and the defendant or the defendant's attorney, which consent shall appear in the record, the motion may be carried past the sixtieth day to a date certain; if not ruled upon by the trial court as of the date to which the motion is continued, the motion is deemed denied as of that date, unless it has been continued again as provided in this section. The motion may be continued from time to time as provided in this section."
The Alabama Supreme Court recently addressed the effect of a denial by operation of law pursuant to Rule 24.4 in Edgar v.State, 646 So.2d 683, 687 (Ala. 1994), in which it stated:
 "We hold that where . . . a criminal defendant's motion for a new trial is denied under the provisions of Rule 24.4, Ala.R.Crim.P., without an affirmative statement by the trial judge giving the ruling a presumption of correctness and the defendant supports his new trial motion by evidence that was not presented at trial, and that evidence, if not controverted by the State, will entitle him to a new trial, the denial by operation of law should be reversed and the case remanded for the trial court to conduct a hearing on his motion for new trial and then enter an order either granting or denying the motion."
The next task before us, therefore, is to determine whether the uncontroverted evidence presented in Hill's motion would entitle him to a new trial under Brady.
To establish a Brady violation, a defendant must show (1) that the prosecution suppressed evidence, (2) that the evidence suppressed was favorable to the defendant or was exculpatory, and (3) that the evidence suppressed was material to the issues at trial. Ex parte Kennedy, 472 So.2d 1106 (Ala.), cert. denied, 474 U.S. 975, 106 S.Ct. 340, 88 L.Ed.2d 325 (1985).
In his motion, Hill presented evidence that at the time of trial Guilford had filed a civil action against the City of Montgomery based on Hill's conduct at issue in this case. The motion included copies of letters to the City of Montgomery from Guilford's attorney, in which Guilford sought $75,000 from the city.
The fact that Guilford was seeking damages in a related civil action could have been used to impeach Guilford's credibility as a witness by showing that he had an additional reason to be interested in the outcome of the case. Of course, civil liability may follow criminal liability in most fact situations. Evidence that could be used for impeachment purposes falls within the ambit of materials that must be disclosed pursuant to Brady. The United States Supreme Court inUnited States v. Bagley, 473 U.S. 667, 676, 105 S.Ct. 3375,3380, 87 L.Ed.2d 481, 490 (1985), stated:
 "Impeachment evidence . . . as well as exculpatory evidence, falls within the Brady rule. See Giglio v. United States, 405 U.S. 150, 154, 92 S.Ct. 763 [766], 31 L.Ed.2d 104
(1972). Such evidence is 'evidence favorable to an accused,' Brady, 373 U.S. at 87 [83 S.Ct. at 1196], so that, if disclosed and used effectively, it may make the difference between conviction and acquittal. Cf. Napue v. Illinois, 360 U.S. 264, 269, 79 S.Ct. 1173 [1177], 3 L.Ed.2d 1217 (1959) ('the jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend')."
See also Savage v. State, 600 So.2d 405 (Ala.Cr.App.), cert. denied, 600 So.2d 409 (Ala. 1992).
Hill, however, admits in his brief that the prosecution was without actual knowledge of Guilford's civil action against the city. In Parker v. State, 587 So.2d 1072, 1086 (Ala.Cr.App. 1991), we stated:
 "The appellant's discovery rights under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), were not violated because the prosecutor is not required *Page 1132 
to disclose evidence he does not possess. 'While it is true that under Brady the good faith of the prosecutor in not disclosing information is irrelevant, 373 U.S. at 87, 83 S.Ct. at 1196, Brady
does require that the information requested be known to the prosecution. United States v. Agurs, 427 U.S. 97, 103, 96 S.Ct. 2392, 2397, 49 L.Ed.2d 342 (1976); Antone v. Strickland, 706 F.2d 1534, 1544 (11th Cir. 1983) (Kravitch, J., concurring specially) [, cert. denied, 464 U.S. 1003, 104 S.Ct. 511, 78 L.Ed.2d 699 (1983)]. . . . United States v. Walker, 720 F.2d 1527, 1535 (11th Cir. 1983), cert. denied, 465 U.S. 1108, 104 S.Ct. 1614, 80 L.Ed.2d 143 (1984)."
In certain situations, however, knowledge of the existence of evidence will be imputed to the prosecution even when the prosecution is without actual knowledge of the existence of the evidence. "Knowledge of requested information is presumed when the information is in the prosecutor's files. . . ." Ex parteCammon, 578 So.2d 1089, 1091 (Ala. 1991), citing United Statesv. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). The knowledge of law enforcement agents is also imputed to the prosecution. Duncan v. State, 575 So.2d 1198 (Ala.Cr.App. 1990), cert. denied, 575 So.2d 1208 (Ala. 1991). See also Felix V. Lapine, Annotation, Withholding or Suppression of Evidenceby Prosecution in Criminal Case as Vitiating Convictions, 34 A.L.R.3d 16, § 12[a] (1970); 21A Am.Jur.2d, Criminal Law, § 770 (1981); W. LaFave and J. Israel, 2 Criminal Procedure § 19.5 (1984).
 "The duty of disclosure extends not only to the individual prosecutor and the prosecutor's office . . . but also to persons working as part of the prosecution team or intimately connected with the government's case, even if not employed in the prosecutor's office, such as police, investigative agencies and officers, and all law enforcement agencies which have participated in the investigation or evaluation of the case and regularly report or have reported to the prosecutor."
22A C.J.S. Criminal Law, § 489(b) (1989).
There was no allegation that any law enforcement agents involved in the investigation of this case had knowledge of the Mr. Guilford's claim against the city. Furthermore, there was no information concerning the claim in the prosecution's files because Guilford did not discuss his civil claim with representatives of the district attorney's office. We have found no cases where the knowledge of a state's witness is imputed to the state. No state's witness is under an obligation to provide for the defense information to impeach his own testimony.
Although the allegation in Hill's motion was uncontroverted, the motion was due to be denied. There was no evidence that the state suppressed evidence that was within its knowledge, therefore, no Brady violation occurred.
 III
The appellant also contends that the jury's verdicts finding him guilty of the violation of the Ethics Act and not guilty of theft were inconsistent. Inconsistent verdicts, however, do not require reversal. Hammond v. State, 497 So.2d 558 (Ala.Cr.App. 1986). In Hammond, Judge Patterson, writing for this court, explored the relationship between inconsistent verdicts and collateral estoppel:
 "In United States v. Powell, 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984), wherein the United States Supreme Court reasserts the well established principle that inconsistent verdicts are permissible in federal courts, the respondent argued that the principles of res judicata or collateral estoppel should apply to verdicts rendered by a single jury, to nullify a guilty verdict rendered on a compound offense where the jury acquits the defendant of the predicate offense. Id. at 63, 105 S.Ct. at 476. The respondent was urging the Court to carve out an exception to the general rule enunciated in Dunn v. United States, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932), that a defendant convicted by a jury on one count cannot attack that conviction on the ground that it is inconsistent with the jury's verdict of acquittal on another count.
 "In rejecting the respondent's argument for an exception to the Dunn rule, the *Page 1133 
Court noted Dunn's progeny and observed that 'this is not a case where a once-established principle has gradually been eroded by subsequent opinions of this Court.' 469 U.S. at 63, 105 S.Ct. at 476. In further proclaiming the soundness of the Dunn rule and disregarding the respondent's argument, the Powell Court stated:
 " 'As the Dunn Court noted, where truly inconsistent verdicts have been reached, "[t]he most that can be said . . . is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt." Dunn, supra, 284 U.S., at 393, 52 S.Ct., at 190. The rule that the defendant may not upset such a verdict embodies a prudent acknowledgement of a number of factors. First, as the above quote suggests, inconsistent verdicts — even verdicts that acquit on a predicate offense while convicting on the compound offense — should not necessarily be interpreted as a windfall to the Government at the defendant's expense. It is equally possible that the jury, convinced of guilt, properly reached its conclusion on the compound offense, and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the lesser offense. But in such situations the Government has no recourse if it wishes to correct the jury's error; the Government is precluded from appealing or otherwise upsetting such an acquittal by the Constitution's Double Jeopardy Clause. [Cites omitted.]
 " 'Inconsistent verdicts therefore present a situation where "error," in the sense that the jury as not followed the court's instructions most certainly has occurred, but it is unclear whose ox has been gored. Given this uncertainty, and the fact that the Government is precluded from challenging the acquittal, it is hardly satisfactory to allow the defendant to receive a new trial on the conviction as a matter of course. Harris v. Rivera, [454 U.S. 339, 102 S.Ct. 460, 70 L.Ed.2d 530 (1981)], indicates that nothing in the Constitution would require such a protection, and we therefore address the problem only under our supervisory powers over the federal criminal process. For us, the possibility that the inconsistent verdicts may favor the criminal defendant as well as the Government militates against review of such convictions at the defendant's behest. This possibility is a premise of Dunn's alternative rationale — that such inconsistencies often are a product of jury lenity. . . .
 " '. . . The fact that the inconsistency may be the result of lenity, coupled with the Government's inability to invoke review, suggests that inconsistent verdicts should not be reviewable.
 " 'We also reject, as imprudent and unworkable, a rule that would allow criminal defendants to challenge inconsistent verdicts on the ground that in their case the verdict was not the product of lenity, but of some error that worked against them. Such an individualized assessment of the reason for the inconsistency would be based either on pure speculation, or would require inquiries into the jury's deliberations that courts generally will not undertake. [W]ith few exceptions, once the jury has heard the evidence and the case has been submitted, the litigants must accept the jury's collective judgment. Courts have always resisted inquiring into a jury's thought processes . . . through this deference the jury brings to the criminal process, in addition to the collective judgment of the community, an element of needed finality.
 " 'Finally, we note that a criminal defendant already is afforded protection against jury irrationality or error by the independent review of the sufficiency of the evidence undertaken by the trial and appellate courts.' "
"469 U.S. at 64-67, 105 S.Ct. at 477-78 (footnote omitted).
 "In commenting further on the respondent's argument that the acquittal on the predicate offense should collaterally estop the Government on the compound offense, the Court stated that 'the argument necessarily *Page 1134 
assumes that the acquittal on the predicate offense was proper — the one the jury "really meant." ' Id. at 68, 105 S.Ct. at 478. However, as the Court recognized, this is not necessarily correct. The Court further noted:
 " 'The problem is that the same jury reached inconsistent results; once that is established principles of collateral estoppel — which are predicated on the assumption that the jury acted rationally and found certain facts in reaching its verdict — are no longer useful.'
"Id. at 68, 105 S.Ct. at 479.
 "In conclusion, the Court recognized that the respondent 'is given the benefit of her acquittal on the counts on which she was acquitted, and it is neither irrational nor illogical to require her to accept the burden of conviction on the counts on which the jury convicted.' Id. at 69, 105 S.Ct. at 479.
 "We adopt this approach formulated in Dunn and the cases which followed it and we find that 'the best course to take is simply to insulate jury verdicts from review on this ground.' Id. at 69, 105 S.Ct. at 479 (footnote omitted). This conclusion follows the recent opinion in McClellan v. State, 484 So.2d 1150 (Ala.Cr.App. 1985). There, the court recognized the conflict of views on the treatment of the inconsistent verdicts rendered on several counts and chose to adopt the majority view, which follows the holding of Dunn. See also W. LaFave J. Israel, Criminal Procedure
§ 23.7(e) (1984) (recognizing that most state courts follow the approach taken by the Supreme Court).
 "As Dunn 'stressed the unreviewable power of a jury to return a verdict of not guilty for impermissible reasons,' Harris v. Rivera, 454 U.S. at 346, 102 S.Ct. at 464, so have the Alabama appellate courts. See, e.g., Bradham v. State, 27 Ala. App. 225, 170 So. 222, cert. denied, 233 Ala. 106, 170 So. 223 (1936) (wherein the court recognized that, although the same evidence amply supported a guilty verdict on both counts of the indictment, it was within the province of the jury to find the defendant guilty on only one count)."
Hammond, 497 So.2d 558, 562-63 (Ala.Cr.App. 1986).
The jury's verdict finding the appellant guilty of violating the Ethics Act was supported by the evidence presented at trial. We will not speculate as to the reasons why the jury found the appellant not guilty of theft. The charge related to the same act and was a matter within the purview and judgment of the jury.
For the foregoing reasons, the appellant's conviction is due to be affirmed.
AFFIRMED.
All the Judges concur.