WINDOM, Presiding Judge.
The State of Alabama appeals the circuit court's decision to grant Timothy Flowers penalty-phase relief in his postconviction proceeding pursuant to Rule 32, Ala. R. Crim. P., and to reduce Flowers's sentences of death to sentences of life in prison without the possibility of parole.
On direct appeal, this Court summarized the facts of Flowers's crime and the procedural history of his case as follows:
"On November 28, 2000, Ruby Welch and Brenda Owens reported to police that Tommy Philyaw was missing and that they suspected he had been the victim of a crime. They told police that Owens overheard John Morrow, Flowers's codefendant, and four other individuals talking about robbing Philyaw. Police went to Philyaw's trailer and discovered a large quantity of blood on the dirt road near his trailer and Philyaw's hat near the blood. Philyaw's truck was missing. The investigation focused on Flowers and his codefendants John Morrow, Elizabeth Fillingim, Angela Morrow, and Kendall Packer, after several of the codefendants were interviewed by police and admitted their participation in the events that led to Philyaw's murder. The five codefendants agreed to rob Philyaw of his Christmas club money-a *774 little over $1,000. Their plan called for one of the females to lure Philyaw from his trailer, where the group would then rob him.
"On November 27, 2000, either Fillingim or Angela Morrow went to Philyaw's trailer and, pretending to have car trouble, asked for Philyaw's help. Philyaw followed the individual back to her car. Flowers, John Morrow, and Packer were waiting at the car, and when Philyaw arrived they began beating him with a metal pipe. They then put Philyaw in the back of his truck and drove to a secluded area. While they were driving Philyaw begged for his life and told them that he could get them more money; they continued to beat him with a pistol until they arrived at an isolated area. Flowers shot Philyaw in the back while he was lying face down in the bed of the truck. The truck was then set on fire.
"Flowers led police to the body and to the shotgun used to kill Philyaw. The shotgun belonged to Philyaw. When leading police to the body, Flowers said, 'I hope you have a strong stomach, because this is where the massacre began.'
"The victim's body was badly burned; the remains weighed 65 pounds. The forensic pathologist, Dr. Kathleen Enstice, testified that she could not conclusively state how many times Philyaw had been shot because the fire destroyed some of the evidence. She testified that Philyaw was alive when the shotgun pellets entered his chest and severed his aorta. Another pellet also entered his right shoulder. This shot was also inflicted before his death. Four pellets were recovered from the bed of the truck. Five spent shells were recovered from the scene. Enstice testified that the cause of death was multiple gunshot wounds and that it was her opinion that Philyaw was dead when his body was set on fire.
"Flowers was indicted for murdering Philyaw during the course of a kidnapping and a robbery, for murdering Philyaw while Philyaw was in a motor vehicle, for conspiring with his codefendants to kill Philyaw during a robbery, and for conspiring with his codefendants to kill Philyaw during a kidnapping. The jury convicted Flowers of two counts of capital murder-murder committed during the course of a kidnapping and murder committed during a robbery-and acquitted him of the conspiracy charges.
"A separate sentencing hearing was held before the jury. See § 13A-5-45(a), Ala. Code 1975. The jury, by a vote of 10 to 2, recommended that Flowers be sentenced to death. A presentence report was prepared. See § 13A-5-47, Ala. Code 1975. The circuit court held a separate sentencing hearing at which it heard additional mitigating evidence. See § 13A-5-47(c), Ala. Code 1975. The circuit court found as aggravating circumstances that the murder was committed during the course of a kidnapping and a robbery and that the murder was especially heinous, atrocious, or cruel as compared to other capital offenses. See §§ 13A-5-49(4) and 13A-5-49(8), Ala. Code 1975. The circuit court found as mitigating circumstances that Flowers had no significant history of prior criminal activity, § 13A-5-51(1), that he was 18 years old at the time of the murder, § 13A-5-51(7), that he lacked a stable home life, that his mother had died when he was 16, that he lacked an education, and that he abused drugs, § 13A-5-52. After weighing the aggravating circumstances and the mitigating circumstances the circuit court sentenced Flowers to death."
*775 Flowers v. State, 922 So.2d 938, 942-43 (Ala. Crim. App. 2005). On February 25, 2005, this Court affirmed Flowers's capital-murder convictions and sentences of death. Id. This Court issued the certificate of judgment on August 19, 2005.
On August 16, 2006, Flowers filed a Rule 32 petition challenging his capital-murder convictions and sentences of death. "Flowers later filed an amended Rule 32 petition and a second amended Rule 32 petition. The State answered each of his petitions." (C. 1277.)
On May 7, 2013, the parties deposed Flowers's lead trial counsel, William Pfeifer, Jr. "On June 10-11, 2013, August 5-6, 2013, and June 16, 2014, [the circuit court] held evidentiary hearings on Flowers'[s] second amended Rule 32 petition, at which time the parties presented evidence relating to some of the claims contained therein." (C. 1277.) After receiving post-hearing briefs from the parties, the circuit court denied Flowers's request for guilt-phase relief but held that his counsel had been ineffective in the penalty phase, granted his request for penalty-phase relief, and resentenced him to life in prison without the possibility of parole.
On June 12, 2015, the State of Alabama filed a motion to reconsider, arguing, among other things, that the circuit court had erred by resentencing Flowers to life in prison without the possibility of parole. On June 18, 2015, Flowers filed his response to the State's motion to reconsider. After the circuit court failed to rule on the State's motion to reconsider, the State filed a notice of appeal. Thereafter, Flowers filed a notice of cross-appeal. In an unpublished memorandum that is being released today, this Court affirmed the circuit court's decision denying Flowers guilt-phase relief and its decision holding that trial counsel were ineffective during the penalty phase of Flowers's trial. In this opinion, the Court addresses only the propriety of the circuit court's decision to resentence Flowers to life in prison without the possibility of parole without conducting a new sentencing hearing. Thus, the issue before this Court is as follows: During a postconviction proceeding and after finding that a capital defendant's counsel were ineffective in the penalty phase of his trial, may the circuit court vacate that defendant's sentence of death and resentence him to life in prison without the possibility of parole without holding a new sentencing hearing? For the reasons that follow, this Court holds that the circuit court may not.
Standard of Review
The issue presented in this appeal involves a pure question of law. " ' " 'This Court reviews pure questions of law in criminal cases de novo.' " ' " Ex parte J.C.C., 4 So.3d 1188, 1190 (Ala. 2008) (quoting Ex parte Jett, 5 So.3d 640, 642 (Ala. 2007), quoting in turn Ex parte Morrow, 915 So.2d 539, 541 (Ala. 2004), quoting in turn Ex parte Key, 890 So.2d 1056, 1059 (Ala. 2003) ).
Analysis
After conducting a hearing on Flowers's Rule 32 petition, the circuit court determined that trial counsel's performance in the penalty phase was both deficient and prejudicial to Flowers; therefore, Flowers's right to counsel as provided for under the Sixth Amendment to the United States Constitution was violated. In the same order and without conducting a new penalty-phase trial, the circuit court vacated Flowers's sentences of death and resentenced him to life in prison without the possibility of parole for each conviction.
On appeal, the State argues that the circuit court lacked jurisdiction to modify Flowers's sentences without holding a new *776 penalty-phase trial because more that 30 days had passed since Flowers was originally sentenced. The State also argues that the proper remedy for a defendant whose counsel were ineffective in the penalty phase is for the court to grant a new penalty-phase trial in compliance with §§ 13A-5-46 and 13A-5-47, Ala. Code 1975, i.e., to place the defendant in the position in which he would have been before the constitutional violation occurred.[1] For the reasons that follow, this Court agrees that the proper remedy in Flowers's case was to order a new penalty-phase trial.
Rule 32.1, Ala. R. Crim. P., provides that "any defendant who has been convicted of a criminal offense may institute a proceeding in the court of original conviction to secure appropriate relief on the ground that: (a) [t]he constitution of the United States or the State of Alabama requires a new trial, a new sentence proceeding, or other relief." (Emphasis added.) When asserting an ineffective-assistance-of-counsel claim, a prisoner sentenced to death alleges that his Sixth Amendment right to counsel was violated at some point during the trial proceedings. As a constitutional claim, " ' Rule 32.1(a) is the ... provision that allows a defendant to raise an ineffective-assistance-of-counsel claim in a postconviction proceeding.' " Stallworth v. State, 171 So.3d 53, 76 (Ala. Crim. App. 2013) (quoting Ex parte Pierce, 851 So.2d 606, 614 (Ala. 2000) ). Further, " Rule 32.9(c), Ala. R. Crim. P., authorizes the circuit court, if it 'finds in favor of the petitioner, ... [to] enter an appropriate order with respect to the conviction, sentence, or detention.' " Waters v. State, 155 So.3d 311, 316 (Ala. Crim. App. 2013). In Waters, this Court explained that Rule 32.9(c)"authorizes the circuit court to order 'any further proceedings, including a new trial,' and to address 'any other matters that may be necessary and proper.' " Id. This Court further explained that:
"Rule 32, which provides a procedural vehicle for a defendant to collaterally attack the proceedings that led to his conviction or sentence, authorizes the circuit court to, in essence, reopen the proceedings that led to the petitioner's conviction and sentence if the petitioner demonstrates he is entitled to relief. Our caselaw illustrates that when a Rule 32 petitioner obtains relief, the proceedings are reopened at the point necessary for the circuit court to address the particular problem in that case.
"For example, if a Rule 32 petitioner demonstrates that his sentence is illegal, the circuit court may then reopen the [trial] proceedings and resentence the petitioner. See, e.g., McMillian v. State, 934 So.2d 434 (Ala. Crim. App. 2005) (granting Rule 32 relief where the petitioner's sentence was improperly enhanced under the Habitual Felony Offender Act and instructing the circuit court to resentence the petitioner without the application of the Habitual Felony Offender Act). Additionally, if a Rule 32 petitioner shows that his conviction must be overturned then the conviction-and the corresponding sentence for that conviction-will be set aside and the proceedings will continue from that point-additional proceedings could include, for example, a new trial, a guilty plea, or the dismissal of the charges."
Waters, 155 So.3d at 316-17.
Thus, when a Rule 32 petitioner proves that a constitutional violation has rendered his or her conviction or sentence *777 infirm, the circuit court must grant relief and order that the proceedings be reopened at the point necessary to cure the constitutional violation. Whether the petitioner will ultimately prevail after the proceedings have been reopened, however, is separate and distinct from the Rule 32 proceedings. For instance, once a Rule 32 court has determined that a petitioner's sentence is illegal, the circuit court may only grant the petitioner a new sentencing proceeding because "[t]he determination to grant or to deny postconviction relief and the propriety of the new sentence ... are two distinct judicial matters." Ex parte Walker, 152 So.3d 1247, 1251 (Ala. 2014). After Rule 32 relief has been granted, "[t]he petitioner's new sentence is the result of a complete and independent proceeding, and the legality of the new sentence [was] not the subject of the Rule 32 proceeding in which the new sentencing hearing was granted." Ex parte Walker, 152 So.3d at 1251.
Here, the circuit court found that Flowers's trial counsel were constitutionally ineffective during the penalty phase of his trial. The proper remedy was for the circuit court to reopen the proceedings at the point necessary to cure that constitutional violation-to grant Flowers a new penalty-phase trial in accordance with §§ 13A-5-46, and 13A-5-47, Ala. Code 1975. See Ex parte Womack, 541 So.2d 47, 73 (Ala. 1988) (holding that petitioner's counsel were ineffective and reversing the judgment and remanding the cause "with instructions for the Court of Criminal Appeals to order a new trial"); State v. Ziegler, 159 So.3d 96, 113 (Ala. Crim. App. 2014) (holding that petitioner is "entitled to a new trial" because counsel were ineffective). That, however, is not what occurred. Rather, without notice to the parties, the circuit court treated the Rule 32 proceedings as a new penalty-phase trial and resentenced Flowers to life in prison without the possibility of parole. Because "[t]he determination to grant or to deny postconviction relief and the propriety of the new sentence ... are two distinct judicial matters," Ex parte Walker, 152 So.3d at 1251, the circuit court erred by conflating the Rule 32 proceedings with the penalty-phase trial and resentencing Flowers.
Accordingly, the portion of the circuit court's judgment resentencing Flowers to life in prison without the possibility of parole is reversed, and the cause is remanded with instructions for the circuit court to set aside its order resentencing Flowers and to issue a new order granting Flowers a new penalty-phase trial.
AFFIRMED BY UNPUBLISHED MEMORANDUM IN PART; REVERSED AND REMANDED IN PART.
Welch, Kellum, Burke, and Joiner, JJ., concur.

Sections 13A-5-46 and 13A-5-47, Ala. Code 1975, establish a capital defendant's right to two penalty-phase hearings: one before a jury and the other before a judge. In this opinion, those two hearings are referred to as the "penalty-phase trial."